[relates to Docket Items 64 and 65]
THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JUAN M. VAZQUEZ, | : | HON. JEROME B. SIMANDLE |
| Plaintiff, | : | Civil No. 03-5596 (JBS) |
| v. | : | |
| DEVON BROWN, <u>et</u> <u>al.</u>, | : | **OPINION** |
| Defendants. | : | |

APPEARANCES:

Mr. Juan M. Vazquez
125080/758487B
Riverfront State Prison
P.O. Box 9104
Camden, NJ 08101
     Plaintiff <u>pro</u> <u>se</u>

Keith S. Massey, Jr., Esq.
Office of the NJ Attorney General
Dept. of Law & Public Safety – Division of Law
25 Market Street
P.O. Box 112
Trenton, NJ 08625
     Attorney for Defendants

**SIMANDLE**, District Judge:

     This matter is before the Court upon two motions submitted by Plaintiff, <u>pro</u> <u>se</u>, who is a prisoner at Riverfront State Prison.  In his first motion [Docket Item 64], Plaintiff requests that the Court impose sanctions on the New Jersey Attorney General's office pursuant to Rule 11, F. R. Civ. P., and hold attorneys from that office in civil and criminal contempt for alleged misconduct committed earlier in this litigation.  In that

motion, Plaintiff also requests that the Court enter an order preliminarily enjoining various Defendants and non-parties from violating his constitutional rights.  In his second motion [Docket Item 65], Plaintiff requests that the undersigned recuse himself from further consideration of this case on account of the alleged bias of the undersigned.  For the reasons explained below, the Court will deny Plaintiff's motions for sanctions, contempt and recusal.  Plaintiff's motion for a preliminary injunction will be dismissed without prejudice to refiling in accordance with the considerations set forth in this Opinion.

I.   **BACKGROUND**

A.   **Plaintiff's Allegations**

Plaintiff filed this lawsuit on November 26, 2003, alleging that on numerous occasions a long list of defendants had violated his civil rights during his incarceration at multiple correctional facilities operated by the New Jersey Department of Corrections ("NJDOC").  The facts underlying Plaintiff's claims, taken primarily from his Complaint, are as follows.  Plaintiff was confined at the Garden State Youth Correctional Facility ("GSYCF") from November 28, 1999 through January 10, 2002. (Docket Item 34 at 5.)  In 1999, during his incarceration at GSYCF, Plaintiff filed a separate civil rights complaint alleging that he had been denied access to certain religious articles in

2

violation of his First Amendment rights.[1]  See Vazquez v. Burns, D.N.J. Civil Action No. 99-2589 (GEB).  According to the Complaint, while Vazquez v. Burns was pending, Defendant Brian Bonomo, an employee of GSYCF, filed false disciplinary reports against Plaintiff and threatened Plaintiff's life, acts which Plaintiff alleges were committed as retaliation against Plaintiff to punish Plaintiff for pursuing his claims in Vazquez v. Burns. (Compl., Parties Section, ¶ 6.)

Plaintiff was transferred from GSYCF to the Administrative Close Segregation Unit ("ACSU") at East Jersey State Prison ("EJSP") on January 10, 2002, where he was confined until November 6, 2002.  (Docket Item 34 at 5-6.)  Plaintiff alleges that after he was transferred, Defendants Michael Powers, C. Offei, and T.V. Davis – all of whom are employed by EJSP – unconstitutionally deprived Plaintiff of certain religious articles and legal materials.  (Compl., Parties Section, ¶¶ 9-11.)

On November 6, 2002, Plaintiff was transferred from EJSP to Bayside State Prison ("BSP"), where he was confined until May 7, 2003.  (Docket Item 34 at 6.)  According to Plaintiff, after he

---

[1]  As the Court notes, infra, Plaintiff initially named as a defendant United States District Judge Garrett E. Brown, Jr., who presided over Vazquez v. Burns.  Plaintiff's claims against Judge Brown were dismissed with prejudice due to Judge Brown's judicial immunity when Plaintiff's application to proceed in forma pauperis was granted.  (Docket Item 3.)

was transferred to BSP, Defendant Rina Terry unconstitutionally deprived him of certain religious articles, including a religious book.  (Compl., Statement of Claims, ¶ 52.)  Plaintiff further claims that while he was incarcerated at BSP, he submitted request forms on April 2, 2003 and April 14, 2003, for use of the law library and legal materials, but that his requests were denied.  (Id. at ¶ 56.)  Two days later, on April 16, 2003, Plaintiff was brought to "central control," where Defendant Georgescu yelled at Plaintiff, threatened him with disciplinary action, and ordered him never to enter the prison chapel or law library again.  (Id. at ¶ 58.)  Plaintiff alleges that Defendant Georgescu also wished Plaintiff a "happy Easter" in order to mock Plaintiff's religious beliefs, and indicated that if Plaintiff spoke about these matters he would be killed.  (Id. at ¶¶ 58-60.)  Plaintiff also claims that he was assaulted by Defendant Georgescu, as well as Defendants Caldwell, Cotto, and Bailey, on multiple occasions.  (Id. at ¶¶ 68-70.)

Plaintiff was transferred from BSP to the ACSU at New Jersey State Prison ("NJSP") on May 7, 2003.  (Docket Item 34 at 7.)  Plaintiff alleges that on May 8, 2003, he submitted an Inmate Request Form to Defendant Atchison concerning his religious practices and articles but received no response.  (Compl., Statement of Claims, ¶ 80.)  Plaintiff claims that he made a similar request for legal supplies, to which he likewise received

4

no response.  (<u>Id.</u> at ¶ 86.)  He filed a Complaint in this matter on November 26, 2003 to seek redress for this series of alleged civil rights violations.

**B.  Proceedings Before this Court**

On February 9, 2004, Chief Judge Bissell entered an Order granting Plaintiff's request to proceed <u>in forma pauperis</u> and dismissing with prejudice Plaintiff's claims against Judge Brown and District Court Supervising Deputy Clerk Michael Shanklin. (Docket Item 3.)  On June 23, 2004, this Court ordered the Clerk of Court to correct the docket to reflect Brian Bonomo as an additional defendant and, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, dismissed with prejudice those claims which failed to state a claim for which relief could be granted.[2]

Defendants subsequently moved to dismiss and/or for summary judgment, arguing as to the majority of his claims that Plaintiff had not exhausted his administrative remedies as the Prison Litigation Reform Act ("PLRA") requires of all "action[s] . . . brought [by prisoners] with respect to prison conditions under section 1983 of this title, or any other Federal law . . ."  42

---

[2] Specifically, the Court dismissed all claims against Defendant David Ragonese; all claims against Defendants Steven Johnson, Mark Yajcaji and Rina Terry arising out of their testimony in <u>Vasquez v. Burns</u>; all claims for deprivation of Plaintiff's right to procedural due process, arising out of allegedly false disciplinary reports and disciplinary proceedings; and all claims against the Defendants in their official capacities.

U.S.C. § 1997e(a).  In its December 17, 2004 Opinion and Order

(the "December 2004 Opinion and Order"), the Court found that

> the record demonstrates that Plaintiff has exhausted his
> administrative remedies only with respect to his
> allegations of retaliation, as set forth in paragraphs
> six of the Parties section and paragraph twelve of the
> Statement of Claims of Plaintiff's Complaint.  However,
> Plaintiff has failed to exhaust his available
> administrative remedies with respect to all other claims
> raised herein, particularly his claims that he was
> threatened by staff at GSYCF.

(Docket Item 34 at 17.)  The Court then noted that courts in this

district and "in other jurisdictions confronted with complaints

involving both exhausted and unexhausted claims have held that

the entire case should be dismissed."  (Id. at 11-12) (citing

Rivera v. Whitman, 161 F. Supp. 2d 337, 341 (D.N.J. 2001), rev'd

on other grounds, Ray v. Kertes, 285 F. 3d 287, 293 n.6 (3d Cir.

2002); Keenan v. Twommey, 229 F.3d 1152 (6th Cir. 2000); Graves

v. Norris, 218 F.3d 884 (8th Cir. 2000)).  Based on this

authority, the Court dismissed the action without prejudice to

give Vazquez the opportunity to administratively grieve his

unexhausted claims, or to abandon his unexhausted claims and

proceed only with the exhausted claims.  Plaintiff filed a motion

for reconsideration of the December 2004 Opinion and Order, which

the Court denied.

### C.  Subsequent Procedural History

Plaintiff appealed the December 2004 Opinion and Order to

the Court of Appeals for the Third Circuit, which entered an

Order affirming this Court's decision on August 4, 2005.  (Docket
Item 58.)  Plaintiff then filed a petition for a writ of
certiorari with the Supreme Court.  On January 22, 2007, the
Supreme Court issued its opinion in <u>Jones v. Bock</u>, --- U.S. ----,
127 S. Ct. 910 (2007), which granted Plaintiff's petition and
vacated the order of the Court of Appeals.  In <u>Jones</u>, the Supreme
Court held that when faced with prisoner complaints asserting
exhausted and unexhausted claims, a district court should proceed
with the exhausted claims rather than dismissing the entire
action.  <u>Id.</u> at 925-26.  On May 3, 2007, the Court of Appeals
vacated this Court's December 2004 Order and remanded the case
back to this Court for further proceedings consistent with
<u>Jones</u>.[3]

### D.   Plaintiff's Motions and Certifications

Following the May 3, 2007 order of the Court of Appeals,
Plaintiff filed the motions presently before the Court.  Along
with his motions, Plaintiff filed certifications attesting to
facts relevant to the motions presently under consideration.  The
vast majority of the facts asserted in Plaintiff's certifications
are not based on Plaintiff's personal knowledge, but instead

---

[3]  In its May 3, 2007 order, the Court of Appeals also
affirmed this Court's dismissal of Plaintiff's claims against
Judge Brown and Defendant Shanklin; the Court's Order of June 23,
2004 dismissing various claims and parties as explained in note
2, <u>supra</u>; and the Court's September 15, 2004 Order denying
without prejudice Plaintiff's motion to appoint counsel.

consist of Plaintiff's unsupported speculation as to the improper motives of the undersigned[4] and the attorneys for the defendants[5] over the course of this litigation, and Plaintiff's conclusory accusations that the defendants and their attorneys are involved in a racist conspiracy targeting Plaintiff.[6]  However, Plaintiff does allege a limited number of facts of which he has personal knowledge and  which are relevant to the motions before the Court.  On November 17, 2007, Plaintiff was transferred from NJSP to South Woods Prison ("SWP").[7]  (Vazquez Cert., Aug, 27, 2007 at

---

[4]  Plaintiff asserts, for example, that the undersigned "has shown his sympathies ('beliefs') lie with the racist ideology of the Ku Klux Klan's violent defense fund," (Vazquez Cert., Sept. 10, 2007 at ¶ 14), and that the Court's Order denying Plaintiff's motion for reconsideration was based on the "personal, racial and/or religious beliefs" of the undersigned.  (Vazquez Cert., Aug, 27, 2007 at ¶ 39.)

[5]  For example, Plaintiff states that when the defense attorneys submitted a request for an extension of time to file in November of 2004, it was part of "a continued [racial] conspiracy to subject me to further unconstitutional and illegal acts under the official symbols of the New Jersey Department of Corrections, e.g. swastikas, KKK and satanism."  (Vazquez Cert., Aug. 27, 2007 at ¶ 49) (brackets in original).

[6]  Plaintiff alleges, for example, that "[o]n information and belief, the Commissioner, George Hayman, is being 'legally advised' by the Attorney General's Office not to respond to and/or allow the exhaustion of administrative remedies in order to defeat federal subject-matter jurisdiction, which [racial] conspiracy extends to any and all correctional facilities where I have and/or will be confined therein."  (Vazquez Cert., Aug. 27, 2007 at ¶ 62) (brackets in original).

[7]  Plaintiff states specifically that he was "transferred to South Woods [race-hate] Prison in a [racial] conspiracy to 'cover-up' the attempted murder carried out under the 'legal advisement' of these attorneys."  (Vazquez Cert., Aug, 27, 2007

¶ 48.)  On May 8, 2007, Plaintiff states that he was "racially attacked" and placed in "Temporary Close Custody" in anticipation of a "retaliatory institutional transfer."  (Id. at ¶ 72.)  Plaintiff submitted three inmate request forms to grieve the May 8 attack, to which he claims he received no response.  (Id. at ¶ 73.)  On June 1, 2007, Plaintiff filed a notice of change of address informing the Court that he had been transferred to Riverfront State Prison.  (Docket Item 63.)  None of Plaintiff's submissions identify any allegedly unconstitutional conduct committed by any of the defendants since Plaintiff was transferred to Riverfront State Prison.

Defendants have filed two short briefs in opposition to Plaintiff's motions, in which they address only the motion for sanctions and for recusal.  With regard to Plaintiff's motion to hold defense counsel and the Commissioner of the NJDOC in contempt and the motion for preliminary injunctive relief, Defendants merely assert that Plaintiff's claims are "utterly untrue and unsubstantiated, and should not be considered by the court."[8]  (Def. Opp'n Br. at 2.)

_____

at ¶ 48) (brackets in original).  The Court, of course, does not consider Plaintiff's unfounded speculation as to the motives underlying his transfer in its consideration of the motions before it.

[8]  The Court's evaluation of the issues raised by Plaintiff's motions is made more difficult by Defendants' failure to respond to many of Plaintiff's claims or to develop the record.  Defendants should not respond selectively to Plaintiff's

9

## II.  DISCUSSION

### A.  Motion for Recusal

The Court first considers Plaintiff's motion requesting that the undersigned recuse himself from further consideration of this case on account of Plaintiff's belief that the Court harbors a "pervasive bias" against him.  Plaintiff's motion for recusal is rooted in his belief that the outcome of Defendant's motion for summary judgment was the product of the bias and misconduct of the undersigned.  In his motion for recusal, Plaintiff argues that when considering Defendants' motion for summary judgment, the Court ignored Plaintiff's evidence and misapplied the law as a result of the "personal, racial and religious beliefs" of the undersigned.  (Pl.'s Br. 9.)  For the following reasons, Plaintiff's motion for recusal will be denied.

Under 28 U.S.C. § 455(a), a judge of the United States must "disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  Section 455(a) requires disqualification not only where actual partiality exists, but where the judge's consideration of the case risks creating the appearance of bias.  Liteky v. United States, 510 U.S. 540, 548 (1994).  "The test for recusal under § 455(a) is whether a reasonable person, with knowledge of all the facts, would

_____

motions by opposing only those claims that they choose to and disregarding those claims which Defendants find to be untrue or unsubstantiated.

conclude that the judge's impartiality might reasonably be questioned." United States v. Wecht, 484 F.3d 194, 214 (3d Cir. 2007) (citation omitted).  In determining whether a reasonable person would question the impartiality of a judge under particular circumstances, a distinction is drawn between alleged bias resulting from "a source outside judicial proceedings," on the one hand, and alleged bias stemming from prior proceedings held before the judge in question.  Liteky, 510 U.S. at 554. Under this "extrajudicial source" doctrine, if a party does not demonstrate that the judge's alleged bias stems from a source outside the judicial proceedings, he must bear the substantial burden of proving that "the Judge's opinions and remarks [] reveal a deep-seated or high degree of favoritism or antagonism that would make fair judgment impossible" in order to warrant disqualification.  Wecht, 484 F.3d at 213 (citing Liteky, 510 U.S. at 555-56) (internal quotations omitted); see also LoCascio v. United States, 473 F.3d 493, 495 (2d Cir. 2007) (stating that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion") (citation omitted).

Although the Court finds regrettable Plaintiff's belief that its rulings have been influenced by prejudice, recusal is not warranted in this case.  The Court has made every effort to treat Plaintiff's claims with the seriousness that allegations of civil rights violations deserve, and will continue to do so as this

case proceeds.  However, Plaintiff's frustration with the outcome

of this Court's rulings does not serve as a basis for the

undersigned recuse himself from this litigation.

Plaintiff argues that when considering Defendant's motion

for summary judgment, the Court ignored Plaintiff's evidence that

he had endeavored to exhaust his administrative remedies with

regard to some of his claims but was prevented from doing so.

The record simply does not support this claim.  As the Court

explained in its December 2004 Opinion,

> Plaintiff states that he submitted an Inmate Request Form
> while at GSYCF, dated January 6, 2002, with an eight-page
> letter attached to it regarding a disciplinary action .
> . . . Plaintiff also alleges that he submitted an
> Administrative Remedy Form with correspondence on October
> 9, 2002 to Department of Corrections Division Director
> Douglas Gerardi and mailed it to GSYCF.  However, there
> is no record of this Administrative Remedy Form being
> filed at GSYCF.  <u>Although Plaintiff has provided a copy
> of his correspondence, he has not provided a copy of the
> Administrative Remedy Form</u>.

(Docket Item 34 at 14) (emphasis added, internal citations

omitted).  In other words, there was no evidence in the record to

support Plaintiff's claim that the grievance programs provided by

the various institutions to which he was confined were not

available to him.  This ruling was not the product of the Court's

bias, but was instead the product of a summary judgment record

that did not disclose a genuine issue of material fact as to any

issue in the case.  No reasonable person could find that the

Court's ruling on this issue was the product of "a deep-seated or

high degree of favoritism or antagonism that would make fair judgment impossible."[9]  Wecht, 484 F.3d at 213 (citation omitted).

Plaintiff also appears to argue that the Supreme Court's decision in Jones – holding that under the PLRA, courts faced with prisoner lawsuits asserting exhausted and unexhausted claims should proceed with the exhausted claims rather than dismissing the entire action – indicates that this Court misapplied the law as a result of its alleged bias against Plaintiff.  This is not the case.  As the Court noted, supra, prior to the Supreme Court's decision in Jones, courts in this and other circuits had held that the PLRA contains a "total exhaustion" requirement. See, e.g., Rivera, 161 F. Supp. 2d at 341; Keenan, 229 F.3d at 1152.  Indeed, in Jones the Supreme Court "granted certiorari to resolve the conflict" among federal courts regarding the scope of the PLRA's exhaustion requirements.  Jones, 127 S. Ct. at 914. No reasonable person could find that this Court's pre-Jones application of a rule that had been adopted by courts in numerous

---

[9]  The soundness of the Court's determination that the summary judgment record did not contain evidence raising a question of fact as to whether Plaintiff pursued all available administrative remedies is further supported by the affirmance of this Court's decision by the Court of Appeals.  While that order of affirmance was ultimately vacated by the Supreme Court's decision in Jones, the Supreme Court's clarification of the legal standard for exhaustion did not cast doubt upon the finding by this Court or the Court of Appeals that the record contained no evidence of Plaintiff's effort to comply with prison grievance procedures.

circuits stemmed from a sense of bias or animosity toward Plaintiff.  Wecht, 484 F.3d at 213.

The Court thus finds that recusal is not warranted in this case.  The Court regrets that Plaintiff feels that this litigation has been affected by what he perceives to be the personal animosity of the undersigned toward Plaintiff, and can assure Plaintiff that it harbors no such sentiments toward him.  However, neither Mr. Vazquez's personal dissatisfaction with this Court's rulings, nor his preference to proceed before a different judge, serves as a basis for the undersigned to disqualify himself from this case.  Finding nothing in this matter that would suggest that the "impartiality [of the undersigned] might reasonably be questioned," 28 U.S.C. § 455(a), the Court will deny Plaintiff's motion for recusal.

### B.  Motion for Rule 11 Sanctions and to Hold Defendants in Contempt

The Court next considers Plaintiff's motion to impose sanctions upon Defendants and defense counsel under Rule 11, F. R. Civ. P., and under the Court's power to hold in contempt parties that fail to comply with its orders.  On account of Plaintiff's pro se status, the Court construes his "pleadings liberally."  United States v. Otero, 502 F.3d 331, 334 (3d Cir. 2007).  Plaintiff appears to argue that the Court should impose sanctions on defense counsel pursuant to Rule 11, F. R. Civ., P., and issue an order holding defense counsel and the Commissioner

for the NJDOC in contempt because the arguments raised by
Defendants in support of their motion for summary judgment were
frivolous and designed to obstruct the administration of
justice.[10]  In effect, Plaintiff argues that Defendants should be
sanctioned and/or held in contempt for arguing that Plaintiff's
failure to exhaust all of his claims warranted the dismissal of
his lawsuit because the Supreme Court's decision in Jones
indicated that the PLRA does not impose such a "total exhaustion"
rule on prisoner lawsuits.

The Court does not find that Rule 11 sanctions or an order
of contempt is appropriate, and will thus deny Plaintiff's
motion.  It is well-settled that a court should impose sanctions
under Rule 11 "only in the exceptional circumstance where a claim
or motion is patently unmeritorious or frivolous."  Doering v.
Union County Bd. of Chosen Freeholders, 857 F.2d 191, 194 (3d
Cir. 1988) (internal quotations and citations omitted); see also
Lieb v. Topstone Industries, Inc., 788 F.2d 151, 157 (3d Cir.
1986) ("Rule 11 therefore is intended to discourage pleadings
that are frivolous, legally unreasonable, or without factual

---

[10]  Plaintiff also argues that defense counsel's misconduct
extends beyond the advancement of frivolous arguments to include
submitting false information to the Court about the prisons'
grievance policies, conspiring to frustrate Plaintiff's capacity
to exhaust his administrative remedies, and coordinating "racial
attacks . . . to have [Plaintiff] murdered to prevent the
exposure of the racial hate crimes against humanity occurring
within the NJDOC."  (Pl.'s Br. at 21.)  The evidence does not
support these allegations.

foundation, even though the paper was not filed in subjective bad faith") (internal quotations and citations omitted).  The mere fact that a litigant disagrees with the arguments raised by his opponent does not, of course, serve as the basis for the imposition of sanctions.  Instead, sanctions are imposed only in those rare instances where the evident frivolousness of a claim or motion amounts to an "abuse[] of the legal system."  Doering, 857 F.2d at 194.

The arguments advanced by Defendants in support of their motion for summary judgment do not come close to approximating the "patently unmeritorious or frivolous" category of motions for which Rule 11 sanctions are reserved.  Id.  Plaintiff appears to argue that the frivolousness of Defendants' argument is evidenced by Supreme Court's subsequent holding that the PLRA does not contain a total exhaustion requirement.  But the frivolousness of an argument is not judged retroactively after that argument has not prevailed, but rather, by the state of the law at the time the argument was advanced.[11]  Far from being patently frivolous at the time Defendants submitted their motion, the argument that the PLRA's exhaustion rule required prisoners to exhaust administrative remedies for all of their claims before filing

_____

[11]  A contrary rule would effectively subject every losing party to penalties simply for having not prevailed, which would undermine "[t]he traditional American rule . . . that each party to litigation bears its own costs . . . ."  Doering, 857 F.2d at 193.

suit had been accepted by courts in this district, see, e.g., Rivera, 161 F. Supp. 2d at 341, and multiple courts of appeals, Keenan, 229 F.3d at 1152; Graves, 218 F.3d at 884, before Defendants filed their motion.  Because Defendants' motion was not "patently unmeritorious or frivolous," Doering, 857 F.2d at 194, Plaintiff's motion for sanctions will be denied.

The Court will also deny Plaintiff's motion to hold defense counsel and the Commissioner for the NJDOC in contempt.  Both civil and criminal contempt sanctions address a contemnor's failure to comply with a court order: civil contempt "serv[es] to coerce compliance with a court order or to compensate the other party for losses sustained due to noncompliance," while criminal contempt "is a punitive sanction, designed to vindicate the court's authority for the contemnor's past non-compliance with a court order."  United States v. Pozsgai, 999 F.2d 719, 735 (3d Cir. 1998).  Plaintiff has not shown that defense counsel or the Commissioner have failed to comply with any order of this Court; instead, Plaintiff merely levels a series of accusations of "criminal misconduct" ranging from the employment of "racialized violence in order to obstruct the administration of justice" to the submission of "perjured statements into evidence," to the fabrication of evidence.  (Pl.'s Br. 26-27.)  There is no evidence to support these allegations of misconduct apart from Plaintiff's speculative statements regarding the allegedly racist

motives of the defendants and their attorneys.  Because there is
no indication that the defendants or their attorneys have failed
to comply with any of this Court's orders, Plaintiff's motion for
contempt sanctions will be denied.

### C.   Motion for Preliminary Injunctive Relief

Finally, the Court addresses Plaintiff's motion for
preliminary injunctive relief.  While the precise nature of the
injunctive relief Plaintiff seeks is not entirely clear from his
submissions, Plaintiff appears to seek an order enjoining the
Defendants from engaging in the unconstitutional conduct alleged
in the Complaint and identified in Plaintiff's certifications and
other filings.  These allegations of unconstitutional conduct
include Plaintiff's claims that specific defendants have
subjected Plaintiff to excessive force in violation of the Eighth
Amendment, that other defendants have interfered with Plaintiff's
right to the free exercise of religion under the First Amendment,
and that Plaintiff has been retaliated against for having engaged
in constitutionally protected activity, including having
previously sought legal redress for prior alleged civil rights
violations.

All of the specific constitutional deprivations Plaintiff
alleges that he was subjected to occurred during Plaintiff's
periods of incarceration at five different correctional
facilities – GSYCF, EJSP, BSP, NJSP, and SWP.  Since all of the

18

allegedly unconstitutional acts took place, Plaintiff has been
transferred to Riverfront State Prison, where he is presently
incarcerated.  (Docket Item 63.)  Apart from Plaintiff's general
statement that the "violations . . . continue to be in full
effect," (Pl.'s Br. 31), Plaintiff has alleged no facts and
submitted no evidence indicating that any specific
unconstitutional deprivations have occurred and are likely to
continue to occur at Riverfront State Prison.

      Plaintiff clearly lacks standing to enjoin allegedly
unconstitutional acts taking place at the correctional facilities
where he is no longer incarcerated, since "past exposure to
illegal conduct does not in itself show a present case or
controversy regarding injunctive relief if unaccompanied by any
continuing, present adverse effects."  City of Los Angeles v.
Lyons, 461 U.S. 95, 102 (1983) (internal quotations and citations
omitted); Pennsylvania Prison Soc. v. Cortes, 508 F.3d 156, 167
(3d Cir. 2007) (to show that he has standing to seek injunctive
relief, a plaintiff must offer "evidence that [he] personally
[is] likely to be injured" by the conduct sought to be enjoined).
Additionally, in the absence of a "clear showing [that Plaintiff
will suffer an] immediate irreparable injury" at Riverfront State
Prison, Plaintiff is not entitled to the injunctive relief he
seeks.  Hohe v. Casey, 868 F.2d 69, 72 (3d Cir. 1989); see also
F. R. Civ. P. 65(d) (requiring that "every order granting an

injunction . . . describe in reasonable detail, and not by
reference to the complaint or other document, the act or acts
sought to be restrained").

The record before the Court is plainly insufficient to show
that Plaintiff is likely to suffer irreparable harm at Riverfront
State Prison in the absence of injunctive relief.  Even the most
liberal construction of Plaintiff's submissions would at best
demonstrate that Plaintiff would face the risk of injury if he
remained incarcerated at one of the institutions where the
alleged unconstitutional deprivations took place, which is not
the case.  In light of Plaintiff's pro se status and his general
reference to ongoing violations, however, the Court will afford
Plaintiff the opportunity to clarify the specific
unconstitutional conduct at Riverfront State Prison that he seeks
to enjoin, provided that he has first exhausted administrative
remedies as to such conditions at RSP which he seeks to enjoin.
If, as Plaintiff argues, the "violations [he has suffered]. . .
continue to be in full effect," (Pl.'s Br. 31), Plaintiff should
indicate what specific violations, if any, are taking place at
Riverfront State Prison.  Should Plaintiff choose to submit
evidence in support of his motion in the form of a certification,
his certified statements should be based on his own personal
knowledge, rather than speculation and conclusory statements,
since facts based on personal knowledge of Plaintiff or a

witness-affiant are required before injunctive relief can be considered.

The Court thus will dismiss Plaintiff's motion for preliminary injunctive relief without prejudice to refiling in accordance with the considerations set forth above.

## III. CONCLUSION

For the reasons explained above, the Court will deny Plaintiff's motion for sanctions, for an order holding defense counsel and Defendants in contempt, and for recusal.  Plaintiff's motion for preliminary injunctive relief will be dismissed without prejudice to renewal.  The accompanying Order will be entered.


**March 18, 2008**                      **s/ Jerome B. Simandle**
Date                                     JEROME B. SIMANDLE
                                         United States District Judge