```
               IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW JERSEY
```

JUAN M. VAZQUEZ,

          Plaintiff,

   v.

DEVON BROWN, ET AL.,

          Defendants.

HON. JEROME B. SIMANDLE

Civil Action
No. 03-5596 (JBS/AMD)

**MEMORANDUM OPINION**

**SIMANDLE**, District Judge:

    This matter is before the Court on Plaintiff's motion for a temporary restraining order and preliminary injunction. [Docket Item 169.] In an Order of January 3, 2011, the Court identified the two claims that plausibly entitle the Plaintiff to injunctive relief: the lawfulness of Southern State Correctional Facility's policy with respect to the religious items Plaintiff seeks to possess, and the current impact on Plaintiff of the previous alleged confiscation of Plaintiff's religious items. These remaining claims in this old case arise under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5. This statute states in pertinent part:

> No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution--
>
> (A) is in furtherance of a compelling governmental interest; and

>> (B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).  The Court asked the Defendants to address these claims by showing cause why a temporary restraining order should not be entered, permitting Plaintiff to possess various items of significance to his Santeria religious practices, pending a preliminary injunction hearing.  [Docket Item 170.]  Having received Defendants' opposition to the motion, the Court finds as follows with respect to whether a temporary restraining order should be entered:

   1.  As distinct from the items allegedly confiscated from Plaintiff in the past, it appears that Plaintiff seeks the right to possess: (1) A multi-colored beaded necklace containing about a dozen different colors of beads (Pl.'s Cert. 6-7); (2) bottles of religious oils (id. at 8-9); (3) tarot cards (id. at 9-10); (4) bars of religious soaps (id. at 10-11); (5) certain "reference materials necessary for the practice of Santeria," (id. at 11); (6) "Florida water" containing an alcohol base (id. at 11-12); and (7) incense (id. at 12).

   2.  According to the New Jersey Department of Corrections's policy on possession of Santeria-related religious objects, most of these items are permitted under somewhat restricted circumstances.  The differences between what Plaintiff seeks to possess and what is permitted by the Department of Corrections

                                    2

policy include: (1) only certain necklaces of specified colors and lengths are permitted, apparently excluding the particular necklace Plaintiff seeks the right to wear; (2) the soaps, oils, and incense that Plaintiff seeks are available, but must be provided through the chaplain or volunteer group leader from the community instead of directly to Plaintiff through prison mail; (3) tarot cards are not permitted; (4) the only reference material provided is what the Department of Corrections regards as the primary text for Santeria, the Corpus of Ifa; and (5) Plaintiff seeks alcoholic Florida water while only non-alcoholic Florida water is permitted. (Hicks Decl. ¶¶ 4-12, and Ex. A. ("Guidelines for Religious Practice: Santeria").)

3. While some of these restrictions serve self-evident purposes within the prison, Defendants have not clearly explained how each of these restrictions is a narrowly-tailored effort to serve a compelling interest.

4. Defendants represent that Plaintiff agreed to these restrictions in a partial settlement agreement entered in the course of the litigation of Vazquez v. Burns, 99-cv-2589 (GEB) (D.N.J. Sept. 25, 2003). (Hicks Decl. ¶ 10, and Ex. A ("Guidelines for Religious Practice: Santeria").) There was a partial settlement reached in Vazquez v. Burns on October 2, 2000, which resulted in the withdrawal of Plaintiff's motion for preliminary injunction at the time, [Civil Case No. 99-2589,

3

Docket Items 28 & 29], but the agreement to which the Department of Corrections policy refers is not in the record of this case, nor it is apparent from the docket entries of Civil No. 99-2589. If Defendants seek to have any of Plaintiff's claims dismissed as a result of the agreement in Vazquez v. Burns, then Defendants may file the appropriate motion, which must include evidence regarding the agreement.

5. Defendants also suggest that Plaintiff has failed to exhaust these claims, an issue which this Court has never directly reached after the Supreme Court's decision resulting in remand in this case. (The Court previously found that Plaintiff had failed to demonstrate exhaustion, but this finding was vacated by the Supreme Court's decision in Jones v. Bock, 549 U.S. 199 (2007), which places the burden of proof on Defendants to prove non-exhaustion. Id. at 216-217.) While Defendants' submission suggests that Plaintiff may have failed to exhaust his administrative remedies, it is not clear that Defendants are asserting that Plaintiff failed to follow the ordinary grievance procedure, since Defendants refer only to Plaintiff's failure to follow the particular procedure outlined by Defendants for review of the religious practices guidelines. Moreover, to the extent that Defendants intend to invoke exhaustion as a defense to the claims that are the subject of Plaintiff's motion, then Defendants must file the appropriate motion invoking that

4

affirmative defense. As with any motion with respect to the partial settlement agreement, the Court will grant Defendants leave to file a motion for judgment as to these claims based on Plaintiff's failure to exhaust his administrative remedies. The schedule set herein will require Defendants to promptly raise these preliminary issues — whether these remaining claims are estopped by Plaintiff's consent agreement in Civil No. 99-2589 and whether Plaintiff has failed to exhaust administrative remedies as to these claims — in this seven-year old case or these affirmative defenses may be deemed waived. Any such motions must be filed by February 25, 2011.

6. While the State's submission is an insufficient basis upon which to deny relief altogether, the Court is satisfied that a temporary restraining order is not warranted so long as a preliminary injunction hearing is promptly held. Awarding a prisoner relief from Department of Corrections policies before a temporary injunction hearing can be held is a particularly extraordinary measure, and one not justified by Plaintiff's present showing of his likelihood of success on the merits. See Gerardi v. Pelullo, 16 F.3d 1363, 1373 (3d Cir. 1994) (explaining the requirements for preliminary injunctive relief); 18 U.S.C. § 3626(a)(1)(A) (narrowing further the injunctive relief that may be granted in the context of prisoner litigation). Plaintiff's likelihood of success on the merits is somewhat in doubt given

the probable explanations for the Department of Corrections's restrictions on alcohol, decks of cards, and the distribution of certain items directly to prisoners;[1] and the Court has similar doubts about Plaintiff's ability to show that the exercise of his religion is substantially burdened by his inability to obtain additional reference materials and additional necklaces when there is apparently no impediment to Plaintiff's use of many Santeria articles. These same considerations apply to whether Plaintiff's claims regarding the return of or compensation for his confiscated items present an immediate and irreparable harm of such severity as to warrant extraordinary relief pending a preliminary injunction hearing upon a more complete record.[2]

7. The Court will therefore convene a preliminary injunction hearing to determine the following issues: (a) Whether the prison restrictions substantially burden the sincerely-held

---

[1] In their opposition submission, the Defendants have alluded to the premise that the security needs of a prison can constitute a compelling state interest and that deference is due to institutional officials' expertise in this area. [Docket Item 176 at 13, quoting Cutter v. Wilkinson, 544 U.S. 709, 722 (2005).] Defendants will have the burden, in their forthcoming submission, to demonstrate how the institutional security rationale is served under the specific circumstances of Plaintiff's case.

[2] In this regard, Defendants are now called upon to answer the question whether the subject items previously seized from Plaintiff as contraband still exist and whether some or all may be made available for his religious use. Defendants' opposition memorandum has offered to further investigate and give a definitive answer to this question. [Docket Item 176 at 8-9.]

religious beliefs of Plaintiff — in particular, whether seemingly minor differences between alcohol-based and non-alcohol-based Florida water, or between soaps sent directly to Plaintiff and those provided through prison officials, constitute a substantial burden; (b) whether the Department of Corrections has a compelling interest in restricting alcohol-based Florida water, tarot cards, some multi-colored beaded necklaces but not others, additional religious reference materials, and the personal receipt of soaps, incense, and oils, and whether these policies are narrowly-tailored to those interests; and (c) whether Plaintiff is able to obtain replacements for the items confiscated from him, and whether the requirement that he buy new items constitutes a substantial burden on the exercise of his religion in the context of this case. The Court will also use the opportunity of the hearing to hold oral argument as to any motion filed with respect to Plaintiff's administrative exhaustion, and any motion filed with respect to the effect of the partial settlement in Vazquez v. Burns, 99-cv-2589 (GEB) (D.N.J. Sept. 25, 2003) upon this case.

    8. Also pending before this Court is a motion for the appointment of pro bono counsel [Docket Item 168]. The Court will consider the circumstances of the present motion in determining whether Plaintiff should be appointed counsel. The accompanying Order will be entered.

**January 28, 2011**                                     s/ Jerome B. Simandle
Date                                                                                       JEROME B. SIMANDLE
                                                                                            United States District Judge